# In the United States Court of Federal Claims

No. 21-1912C

(E-filed:  February 24, 2022)[1]

|  |  |  |
|---|---|---|
| COLSA CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| Defendant, | ) | Post-Award Bid Protest; Motion for |
| and | ) | Judgment on the Administrative |
| | ) | Record; RCFC 52.1; Standing. |
| DTECHLOGIC, LLC, | ) | |
| and | ) | |
| | ) | |
| TRIDENT TECHNOLOGIES, LLC, | ) | |
| Intervenor-defendants. | ) | |

Robert J. Wagman, Jr., Washington, DC, for plaintiff.  Joshua R. Robichaud and Ann G. Willett, of counsel.

Igor Helman, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and L. Misha Preheim, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Maj. Seth Ritzman and James D. Stephens, United States Army Legal Services Agency, Brian Chapuran, Missile Defense Agency, and Christopher J. McClintock, United States Small Business Administration, of counsel.

---

[1]     This opinion was issued under seal on February 11, 2022.  See ECF No. 69.  The parties were invited to identify source selection, propriety, or confidential material subject to deletion on the basis that the material is protective/privileged.  No redactions were proposed by the parties. See ECF No. 72 (status report).  Thus, the sealed and the public versions of this opinion are identical, except for the publication date and this footnote.

<u>Roderic G. Steakley</u>, Huntsville, AL, for intervenor-defendant DTechLogic, LLC. <u>Benjamin R. Little</u>, of counsel.

<u>Joseph D. West</u>, Washington, DC, for intervenor-defendant Trident Technologies, LLC. <u>Lindsay M. Paulin</u>, <u>Chelsea B. Knudson</u>, <u>Alex Gesch</u>, and <u>Joshua R. Zuckerman</u>, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest challenging the Department of Defense (DOD), Missile Defense Agency's (MDA) decision to exclude plaintiff from competing in its procurement of a support contract for its Advanced Research Center (ARC).  <u>See</u> ECF No. 1 (complaint).  Plaintiff filed a motion for judgment on the administrative record (AR) in this case, ECF No. 49; and defendant and intervenor-defendants each filed cross-motions for judgment on the AR, ECF No. 51; ECF No. 53;[2] ECF No. 55.  After reviewing the motions, the court requested supplemental briefs from the parties regarding plaintiff's standing.  <u>See</u> ECF No. 64.

In ruling on the motions, the court has considered:  (1) plaintiff's complaint, ECF No. 1; (2) the AR, ECF No. 36, ECF No. 39, ECF No. 45;[3] (3) plaintiff's motion for judgment on the AR, ECF No. 49; (4) intervenor-defendant DTechLogic, LLC's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 51; (5) defendant's motion to dismiss, cross-motion for judgment on the AR, and response to plaintiff's motion, ECF No. 53; (6) intervenor-defendant Trident Technologies, LLC's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 55; (7) plaintiff's reply in support of its motion and response to the cross-motions, ECF No. 56; (8) defendant's reply in support of its cross-motion, ECF No. 61; (9) intervenor-defendant DTechLogic's reply in support of its cross-motion, ECF No. 62; (10) intervenor-defendant Trident's reply in support of its cross-motion, ECF No. 63; (11)

---

[2]     Defendant's motion was styled as a motion to dismiss and in the alternative as a motion for judgment on the administrative record (AR).  <u>See</u> ECF No. 53 at 1.  Because the court considered portions of the AR in reaching its decision, the court rules on defendant's motion for judgment on the AR, and will deny defendant's motion to dismiss as moot.

[3]     After filing the AR, defendant filed two motions to correct and complete the AR.  <u>See</u> ECF No. 37 (motion for leave to refile a corrupt document); ECF No. 42 (motion for leave to file document inadvertently omitted from the original AR).  The court granted both motions and directed defendant to complete the AR by filing the documents using the case management/electronic case filing system docketing event "supplement to the AR," <u>see</u> ECF No. 38; ECF No. 44, which defendant did, <u>see</u> ECF No. 39; ECF No. 45.

plaintiff's supplemental brief, ECF No. 65; (12) intervenor-defendant Trident's responsive supplemental brief, ECF No. 66; (13) defendant's responsive supplemental brief, ECF No. 67; and (14) intervenor-defendant DTechLogic's responsive supplemental brief, ECF No. 68.

The motions are now fully briefed, and ripe for decision.  The parties did not request oral argument, and the court deems such argument unnecessary.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, plaintiff's motion for judgment on the AR is **DENIED**, defendant's motion to dismiss is **DENIED** as moot, and its alternative motion for judgment on the AR is **GRANTED**, and intervenor-defendants' cross-motions for judgment on the AR are **GRANTED**.

I.      Background[4]

A.      The Missile Defense Agency

The MDA is a research and development agency whose primary mission is to "develop and field" a Missile Defense System (MDS) to protect the United States from hostile missile attack.  ECF No. 53 at 13.  As part of ensuring it is prepared to fulfill its mission, the agency conducts testing of its MDS using "highly advanced modeling and simulation activities," which require the agency to "provide[], maintain[], and develop[] common test resources and infrastructure." Id. at 14.  To conduct those tests, the agency relies on the ARC, whose mission "'is to perform network/infrastructure design, house and maintain the []MDS guided missiles and space tactical hardware and software, to maintain cybersecurity compliance, and to perform lab asset management to realistically emulate/simulate the complex weapon systems' of the MDS." Id. at 15 (quoting Advanced Concepts Enters., Inc. v. United States, 142 Fed. Cl. 187, 191 (2019)); see also ECF No. 36-27 at 475 (March 5, 2021, revision 02, ARC Performance Work Statement (PWS)).

The agency also relies on contractors to "perform network and infrastructure design, as well as to develop and maintain the test assets located in the ARC in a cybersecurity compliant environment."  ECF No. 53 at 16 (citing ECF No. 36-27 at 475; ECF No. 36-2 at 241).  The agency performs the testing, while the contractor supports the test environment by maintaining the ARC's assets.  See id.

---

[4]      This case involves considerable detail.  For purposes of deciding these motions the court will relate only those details that are necessary to the instant analysis.

B.      The Solicitation

The procurement at issue here, first begun in 2017, sought support for the "management of the facility and [equipment] that comprises the ARC."  ECF No. 36-2 at 13 (ARC Statement of Work, 2017).  Plaintiff is the "incumbent prime contractor" on this contract.  ECF No. 49 at 31-32.  Prior to issuing the solicitation, the agency issued multiple requests for industry input on its draft statement of work, technical library content, small business interest, and potential organizational conflict of interest (OCI) concerns, and conducted industry day programs seeking input on the contents of the proposed solicitation.  See ECF No. 36-2 at 5-11 (May 8, 2017 ARC Request for Information (RFI)), 197-204 (June 30, 2017 ARC market research report), 205-273 (June 30, 2017 first industry day program), 274-95 (October 24, 2017 RFI), 469-74 (November 8, 2017 RFI regarding OCI requirements), 476-80 (December 8, 2017 ARC market research report), 787-832 (April 11, 2018 ARC second industry day program).

On September 10, 2018, the agency issued Solicitation No. HQ0147-18-R-0009 (solicitation) seeking a single contractor to provide infrastructure, operations and maintenance (O&M), and cybersecurity engineering to support the agency's testing operations.  See ECF No. 36-3 at 65-594 (September 10, 2018 solicitation).  Award was to be made on a best value basis "based upon an integrated assessment of all aspects of the evaluation factors and subfactors to include Cost and Price."  Id. at 580.

The solicitation was assigned the North American Industry Classification System (NAICS) code 541715, Research and Development in the Physical, Engineering, and Life Sciences (except Nanotechnology and Biotechnology).  See ECF No. 36-3 at 61.  It was set-aside exclusively for a woman-owned small business (WOSB).  See id. at 63.

C.      Challenge Before the Small Business Administration Office of Hearings
        and Appeals

On September 11, 2018, Advanced Concepts Enterprises, Inc., a WOSB, challenged the solicitation's NAICS code at the Small Business Administration (SBA) arguing that the solicitation did not actually call for research and development.  See ECF No. 49 at 13-14.  The contracting officer argued that the NAICS code was appropriate because the "primary purpose" of the work was research and development, relying particularly on the new ground test concept to which the agency sought to move.  Id.  In so arguing, the contracting officer quoted the performance work statement and explained that "each of these tasks requires the ARC contractor to conduct original investigation to gain knowledge and then use that knowledge to significantly improve the network design."  ECF No. 45 at 985 (September 24, 2018 contracting officer's response to SBA appeal).

4

The SBA upheld the contracting officer's NAICS code determination on October 24, 2018, and that determination was later upheld by this court.  See id. at 1015-30 (SBA October 24, 2018 decision); see also Advanced Concepts, 142 Fed. Cl. 187.

D.     The Evaluation

Four contractors submitted proposals in October 2018, and the agency established a competitive range in March 2019 consisting of three of the four proposals.  See ECF No. 36-9 at 89-98 (March 4, 2019 competitive range decision document).  The three offerors included in the competitive range were intervenor-defendants and a third contractor, Kord Technologies, Inc. (Kord).  See id.

After discussions and receipt of final proposal revisions from the offerors a source selection decision brief was presented in May 2019 to the source selection authority (SSA), and the SSA made a source selection decision.  See ECF No. 36-13 at 195-215 (May 3, 2019 source selection decision information briefing), 216-19 (May 6, 2019 SSA memorandum for record).  The agency then awarded the contract to intervenor-defendant DTechLogic based on that decision.  See ECF No. 36-14 at 8.

In July 2019, intervenor-defendant Trident filed a protest at the Government Accountability Office (GAO) alleging, among other claims, that the agency failed to recognize OCIs.  See ECF No. 36-14 at 552-86.  Kord also protested the award.  See id. at 263-90.  In response, the agency initiated an OCI investigation, and, in August 2019, notified the GAO that it would take corrective action by continuing the investigation and "revisit[ing] the acquisition, evaluations, and award decision to determine what actions, if any, were warranted."  Id. at 707; see also id. at 709-11 (memorandum from contracting officer detailing the basis for the corrective action).  In response, the GAO dismissed both protests as academic.  See id. at 717-18 (August 15, 2019 Trident GAO decision); id. at 546-47 (August 15, 2019 Kord GAO decision).

The agency then requested final proposal revisions from each offeror, to be submitted in November 2019, which the agency intended to re-evaluate.  See ECF No. 36-15 at 46-51.  On January 10, 2020, the agency communicated the results of its evaluation to its SSA, and the SSA established a new competitive range including only plaintiff and intervenor-defendant.  See ECF No. 36-24 at 109-59 (January 10, 2020 competitive range briefing); id. at 160-66 (January 15, 2020 competitive range decision document).  The agency reopened discussions with the two remaining offerors on January 16, 2020, and closed them on January 24, 2020, when it requested final proposal revisions.  See id. at 270, 301, 303.  The agency concluded its evaluation of the January 2020 proposals in October 2020.  See ECF No. 36-27 at 207-324 (October 19, 2020 proposal analysis report).

On December 15, 2020, intervenor-defendant DTechLogic notified the agency about a change in key personnel.  See id. at 353.  This prompted the agency to reopen

5

discussions with both intervenor-defendants on January 13, 2021.  See id. at 352-53, 364-66.  The agency then issued amendment 6 to the solicitation on March 9, 2021, at the conclusion of those discussions.  See id. at 375-473 (amendment 6).  The amendment was intended to "incorporate an updated PWS, section L & M, period of performance and to add [Defense Federal Acquisition Regulation Supplement (DFARS)] provision 252.204-2019 and clause 252.204-2020."  Id. at 375.  Once again, the agency requested final proposal revisions from the two remaining offerors—intervenor-defendants.  See id. at 549-51.  Those were submitted on April 2, 2021.  See ECF No. 36-28 at 1-80 (DTechLogic April 2, 2021 final proposal revision); ECF No. 39-1, 39-2 (Trident April 2, 2021 final proposal revision).

After several additional rounds of discussion, the source selection team evaluated each offeror's final proposal and issued a final cost evaluation report on August 16, 2021, and a final proposal analysis report on August 29, 2021.  See ECF No. 36-30 at 582-604 (August 16, 2021 cost/price evaluation report), 605-723 (August 19, 2021 proposal analysis report).  On August 30, 2021, the SSA reaffirmed the award to intervenor-defendant DTechLogic.  See id. at 724-27 (August 30, 2021 SSA memorandum for record).  The agency notified DTechLogic that same day of the award, stating that it had "decided it was necessary to re-evaluate proposals and make a new award decision," and that it had completed that process and made a new award decision re-affirming the award to DTechLogic.  Id. at 728.

E.     The WOSB Status of the Offerors

According to plaintiff, DTechLogic appeared in the SBA's dynamic small business search (DSBS), but was not certified as a WOSB as of May 14, 2021, and was no longer listed in the DSBS as of September 2021.  See ECF No. 49 at 24.  Likewise, DTechlogic's parent company, Davidson Technologies, was not certified as a WOSB as of September 21, 2021.  See id.  Plaintiff also asserts that in March 2019, a private equity firm acquired Trident, which is now jointly managed with Smartronix, Inc.  See id.  Trident also represents on the government's System for Award Management (SAM) that it is not a small business and it does not appear in the DSBS as of September 2021.  See id. at 24 n.8.

Plaintiff sent a letter to the agency on May 20, 2021, that "provided a detailed explanation of SBA's new regulations" regarding WOSB eligibility and "outlining the ineligibility of all remaining offerors as WOSBs."  Id. at 25 (citing ECF No. 36-30 at 801-04).  In its letter, plaintiff stated:

COLSA Corporation has learned that the remaining competitors for the Advanced Research Center ("ARC") support follow-on contract under Request for Proposals No. HQ014718R0009 (the "RFP") are not certified Women Owned Small Businesses (WOSB) and are no longer eligible for an

award. The attached provides the rationale on why COLSA believes MDA
will be unable to execute an award under the current solicitation.

ECF No. 45 at 1009.

The agency contacted the SBA on June 9, 2021, seeking the SBA's "expertise" on
whether its understanding that "a firm that was eligible as a WOSB at the time of offer
for the contract is considered a WOSB throughout the life of the contract," and whether it
could award a contract to a firm whose ownership had changed such that it was no longer
a WOSB. Id. at 1013. The SBA responded that it "agree[s] that the firm remains eligible
for the contract." Id. at 1012.

On July 8, 2021, the agency responded to plaintiff's letter, stating that the "MDA
has reviewed your concerns, to include coordination with the SBA. At this time, MDA
has no plans to cancel the subject referenced solicitation." Id. at 1005.

F.    Procedural History

Plaintiff filed its protest in this court on September 27, 2021. ECF No. 1. The
parties have now filed cross-motions for judgment on the administrative record, which
are fully briefed and ripe for decision.

II.    Legal Standards

In its complaint, plaintiff invokes this court's bid protest jurisdiction. See ECF
No. 1 at 2. This court's bid protest jurisdiction is based on the Tucker Act, which gives
the court authority:

> to render judgment on an action by an interested party objecting to a
> solicitation by a Federal agency for bids or proposals for a proposed contract
> or to a proposed award or the award of a contract or any alleged violation of
> statute or regulation in connection with a procurement or a proposed
> procurement. . . . without regard to whether suit is instituted before or after
> the contract is awarded.

28 U.S.C. § 1491(b)(1). The Tucker Act also states that the court may grant "any relief
the court considers proper . . . including injunctive relief." 28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must therefore demonstrate that it is an
"interested party." 28 U.S.C. § 1491(b)(1). The United States Court of Appeals for the
Federal Circuit has held that the "interested party" requirement "imposes more stringent
standing requirements than Article III." Weeks Marine, Inc. v. United States, 575 F.3d
1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the
statute, courts have construed it to require that a protestor "establish that it '(1) is an

actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'" See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).

Once jurisdiction is established, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)). If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

III.    Analysis

A plaintiff must demonstrate that it is an "interested party," in order to establish this court's jurisdiction. 28 U.S.C. § 1491(b)(1). Although the term "interested party" is not defined by the statute, the Federal Circuit has construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'" Weeks Marine, 575 F.3d at 1359 (quoting Rex, 448 F.3d at 1308) (alteration in original). "Protestors must meet both prongs to establish standing." SEKRI, Inc. v. United States, 152 Fed. Cl. 742, 748 (2021) (citing Rex, 448 F.3d at 1307); CGI Fed. Inc. v. United States, 779 F.3d 1346, 1348 (Fed. Cir. 2015)).

The record in this case is clear that plaintiff was not an actual bidder in the subject procurement. See ECF No. 49 at 31-32 (noting that plaintiff "is the incumbent prime contractor" and that it was "excluded from this procurement"). Thus, under the operative analysis, to establish standing plaintiff must demonstrate both that it: (1) was a prospective bidder, and (2) has a direct economic interest in the procurement. See Weeks Marine, 575 F.3d at 1308. Plaintiff's case founders on the first requirement.

To qualify as a prospective bidder, and therefore to "be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." MCI Telecomms. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989) (emphasis in original).[5] In addition, "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." Id.

---

[5]    In MCI Telecommunications Corp. v. United States, 878 F.2d 362 (Fed. Cir. 1989), the United States Court of Appeals for the Federal Circuit analyzed the meaning of "interested party" under a different statute, but in Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006), the Federal Circuit held that the definition of "interested party" in MCI "applies to the Tucker Act with equal force." Accordingly, the court makes no distinction here based on the context of the defined term.

In <u>MCI</u>, for example, the plaintiff did not submit its own proposal in response to the solicitation, but served as a subcontractor on another company's proposal.  <u>See MCI</u>, 878 F.2d at 363.  After the contract was awarded, the plaintiff filed an agency protest action on the bases that:  (1) the awardee's proposal "failed to conform with material, mandatory requirements of the solicitation," and (2) the agency "impermissibly waived mandatory contract requirements rather than resolicit the contract."  <u>Id.</u> at 364.  The board concluded that the plaintiff was not an actual or a prospective bidder, and therefore, was not an interested party.  <u>See id.</u>

On appeal, the Federal Circuit framed the question before it as follows:  "whether a would-be protestor wishing to bring about a resolicitation on which it says it intends to bid has the necessary status, even though it failed to either bid in response to the original solicitation or to protest before the close of the proposal period for the original solicitation."  <u>Id.</u> at 364.  The court affirmed the board's decision, reasoning that "[s]ince the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends, [the plaintiff's] stated intention to submit a proposal in response to any resolicitation, and its efforts to secure resolicitation by filing a protest, can do nothing to create the necessary interested party status."  <u>Id.</u> at 365; <u>see also</u> <u>Fed. Data Corp. v. United States</u>, 911 F.2d 699, 704 (1990) (stating that a party "who only intends to bid in the event of a reprocurement" is not a prospective bidder).  Notably, the court confirmed that its decision was not dependent on "how well founded" the plaintiff's allegations of procurement errors were.  <u>See MCI</u>, 878 F.2d at 365.

The Circuit reached a similar—but perhaps broader—conclusion in <u>Rex Service Corp.</u>, 448 F.3d 1305.  The plaintiff in <u>Rex</u> filed an agency protest to a request for proposals in which it alleged that the agency had disclosed the plaintiff's proprietary information and sought to exclude from the competition any company that used that information.  <u>See id.</u> at 1306-07.  The agency's alleged violations did not prevent the plaintiff from submitting a proposal, but it did not do so.  <u>See id.</u> at 1307.  The agency subsequently denied the plaintiff's protest and awarded the contract to another offeror.  <u>See id.</u>  In the month following the award decision, the plaintiff filed a protest before this court.  <u>See id.</u>  The court concluded that the plaintiff was not an interested party, and dismissed the case.  <u>See id.</u>  The Federal Circuit held that the plaintiff was not a prospective bidder despite the fact that it had filed an agency-level protest before the contract award because the plaintiff "could have bid, but chose not to."  <u>Id.</u> at 1308.

The Circuit noted that the plaintiff "'could have [bid] for the contract award . . . and could have utilized the protest procedures available to an interested party to correct [the] deficiencies it perceived in the procurement process.'"  <u>Id.</u> (quoting <u>Fed. Data Corp.</u>, 911 F.2d at 705).  The Circuit summarized the case as follows:  "In the end, [the plaintiff] did not submit a bid; nor did it file a timely bid protest in the Court of Federal Claims, in which it established that it expected to bid prior to the close of the solicitation

period, but was prevented from doing so on the basis of improper agency action." Id. (citing MCI, 878 F.2d at 365).

In contrast to the decisions in MCI and Rex, the Federal Circuit concluded that the plaintiff in CGI, 779 F.3d 1346, was a prospective bidder.  The plaintiff in CGI did not submit a proposal in response to the subject request for quotes, but did file a protest before the Government Accountability Office (GAO) during the bidding period.  See id. at 1348.  The bidding period closed while the protest was pending, and the GAO subsequently denied the protest.  See id.  Three business days after the GAO's denial, the plaintiff filed a protest action before this court.  See id.  The Federal Circuit addressed the issue of whether the plaintiff lost its prospective bidder status during the three-day lapse between the protest actions.  See id. at 1350.

After a review of the relevant case law, the Circuit articulated the broad requirement that to qualify as a prospective bidder, a plaintiff must "diligently pursue its protest rights." Id. at 1349.  It concluded that, unlike the plaintiffs in cases such as MCI and Rex, who failed to diligently pursue their protest rights as explained above, the plaintiff in CGI had "diligently and continuously pursued its rights in the GAO and then, immediately upon dismissal by the GAO, in the Court of Federal Claims." Id.  The three days that passed between protests was not a sufficient delay to strip CGI of the prospective bidder status that it "secured" by filing a protest before the GAO during the bidding period.  Id. at 1350.

Here, plaintiff's case resembles both MCI and Rex far more than CGI.  Like the parties in MCI and Rex, plaintiff chose not to file a protest action during the bidding period.  Plaintiff explains that decision, with regard to the first count in its complaint, by characterizing the violation as inchoate before the contract award was made, and therefore not actionable:

> Count I alleges a violation that prohibits the award of a contract and therefore, [plaintiff's] standing accrued when it learned of the Agency's intention to make an award of a set-aside contract to an entity that was not certified.  In this case, [plaintiff] learned of the Agency's intent on or about August 30, 2021.

ECF No. 65 at 7.  Plaintiff's contention that it was unaware of the agency's intent with regard to the award decision is belied by the record in this case.

On May 20, 2021, more than three months before the date on which plaintiff claims to have learned of the agency's intent to award the contract to an ineligible offeror, it sent a letter to the agency in which it stated, in relevant part, as follows:

> COLSA Corporation has learned that the remaining competitors for the Advanced Research Center ("ARC") support follow-on contract under Request for Proposals No. HQ014718R0009 (the "RFP") are not certified Women Owned Small Businesses (WOSB) and are no longer eligible for an award. The attached provides the rationale on why COLSA believes MDA will be unable to execute an award under the current solicitation.

ECF No. 45 at 1009.  In response to this inquiry, on July 8, 2021, the agency informed plaintiff that:  "MDA has reviewed your concerns, to include coordination with the SBA. At this time, MDA has no plans to cancel the subject referenced solicitation."  Id. at 1005.

Plaintiff describes the agency's response as "cryptic," and subject to "an infinite number of possible and theoretical actions that it could take at any time thereafter."  ECF No. 65 at 17.  The court disagrees.  Read together, plaintiff's inquiry and the agency's response clearly indicate that the agency understood plaintiff's concerns, had investigated their import with the SBA, and decided not to change course.  Plaintiff evidently had reason to believe there was a potential problem on May 20, 2021, when it contacted the agency.  And certainly plaintiff was on notice that the agency had not excluded the possibility of acting in a manner that plaintiff considered a violation of applicable regulations upon receipt of the agency's response.

Simply put, plaintiff has made no plausible argument that it could not have challenged the offerors' eligibility for award prior to the award decision.  Because plaintiff failed to mount such a challenge, the court finds that it did not "diligently pursue its protest rights," and cannot claim prospective bidder status.  CGI, 779 F.3d at 1349. The first count of plaintiff's complaint, therefore, must be dismissed for lack of standing.

Plaintiff fares no better in its attempt to show standing with regard to the second count in its complaint, which it describes as follows:

> In Count II, [plaintiff] alleges that Amendment 0006 was a material amendment to the terms of the Solicitation, which required MDA to cancel the Solicitation and issue a new solicitation under full and open competition. MDA did not do so which was a violation of [the Competition in Contracting Act].

ECF No. 65 at 18.  Plaintiff claims to have learned of this amendment during the pendency of Trident's GAO protest in September 2021, see id., which followed the

agency's August 30, 2021 award decision, see ECF No. 36-30 at 724-27.[6]

To find that plaintiff qualified as a prospective bidder and gained standing to protest upon learning of the amendment in September 2021, would require the court to reach a conclusion that directly contradicts Federal Circuit precedent establishing that "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." MCI, 878 F.2d at 365.  Because the agency issued an award decision before plaintiff filed its protest, the proposal period was certainly closed by that time.  The court is unconvinced that such a dramatic exception to the Federal Circuit's prospective bidder jurisprudence is supportable.  Therefore, plaintiff has failed to establish that it is a prospective bidder as to its second count, and that count must also be dismissed for lack of standing.

IV.     Conclusion

Accordingly, for the foregoing reasons:

(1)     Plaintiff's motion for judgment on the AR, ECF No. 49, is **DENIED**;

(2)     Defendant's motion to dismiss, ECF No. 53, is **DENIED** as moot, and its alternative cross-motion for judgment on the AR is **GRANTED**; and intervenor-defendants' cross-motions for judgment on the AR, ECF No. 51 and ECF No. 55, are **GRANTED**;

(3)     The clerk's office is directed to **ENTER** final judgment in defendant's and intervenor-defendants' favor **DISMISSING** plaintiff's complaint with prejudice; and

(4)     On or before **February 28, 2022**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion, with all competition-sensitive information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge

---

[6]     Plaintiff has not identified, and the court did not find, any authority requiring the agency to make the amendment information public at the time it was issued.  Plaintiff was not privy to the terms of the amendment in this case because it was outside the procurement process.  And plaintiff was outside the procurement process because it was not eligible to participate in the process as a WOSB.